UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LAUREN ASHLEY MILLER,

    Plaintiff,

v.                                                                         Case No. 1:20-cv-639
                                                                      Hon. Ray Kent

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant,
_____/

## OPINION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (Commissioner) with respect to her application for disability insurance benefits (DIB) and supplemental security income (SSI).

On March 8, 2017, plaintiff protectively filed applications for DIB and SSI, alleging a disability onset date of November 16, 2014. PageID.59. Plaintiff identified her disabling conditions as: Lyme disease; trigeminal neuralgia; migraines; temporomandibular joint (TMJ) dysfunction; myofascial pain syndrome; cervical facet syndrome; and sleep troubles. PageID.295. Prior to applying for DIB, plaintiff completed four or more years of college, and had past employment as a children's tutor, child monitor, barista, home health aide, and substitute teacher. PageID.81, 296. An ALJ reviewed plaintiff's application de novo and entered a written decision on April 19, 2019. PageID.59-82. The ALJ found that plaintiff had a closed period of disability. The ALJ found that plaintiff was disabled under the Social Security Act from November 16, 2014, to March 31, 2016; that her disability ended on April 1, 2016; and that she was not disabled from

1

April 1, 2016, through the date of the decision, April 19, 2019. PageID.81-82. This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

"The federal courts review the Commissioner's factual findings for substantial evidence and give fresh review to its legal interpretations." *Taskila v. Commissioner of Social Security*, 819 F.3d 902, 903 (6th Cir. 2016). This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, -- U.S. --, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence, this Court has said, is more than a mere scintilla. It means — and means only — such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (internal quotation marks and citations omitted).

A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health and Human Services*, 925 F.2d 146 (6th Cir. 1990). The scope of this review is limited to an examination of the record only. This Court does not review the evidence de novo, make credibility determinations, or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). "If the [Commissioner's] decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports

the opposite conclusion." *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286 (6th Cir. 1994).

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant

3

is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II. ALJ's DECISION

At the first step, the ALJ found that plaintiff engaged in substantial gainful activity for three months in 2017, and has been engaged in substantial gainful activity since September 10, 2018. PageID.63.[1] Plaintiff met the insured status requirements of the Social Security Act through at least June 30, 2018. *Id.*[2] The ALJ made separate findings at steps two through five to address the closed period of disability and plaintiff's condition after the disability ended on March 31, 2016.

### A. Closed period of disability

At the second step, the ALJ found that from November 16, 2014[3] through March 31, 2016, plaintiff had severe impairments of TMJ, Lyme disease, and occipital neuralgia. PageID.64. At the third step, the ALJ found that during that period, plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. PageID.67.

At the fourth step, the ALJ found that:

> After careful consideration of the entire record, the undersigned finds that, from November 16, 2014 through March 31, 2016, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a), in that she could lift and carry no more than ten pounds at a time, and occasionally lift or carry articles such as docket files, ledgers, and small tools.

---

[1] The ALJ found that: plaintiff worked 35 hours a week for three months in the summer of 2017 as an unpaid nanny in Hawaii ("[t]he impartial vocational expert testified that the worth of this type of work is $10.72 an hour or $22,000 annually"); and, that plaintiff began working full time as a middle school youth director on September 10, 2018 (at the administrative hearing on January 15, 2019, plaintiff testified that she was working full time at an annual salary of $34,000). PageID.63-64.

[2] In this regard, the ALJ found that, "[t]he claimant has been working, so it is possible her date last insured has moved since the hearing. This possible change does not affect the outcome of this decision." PageID.63.

[3] The Court notes that plaintiff was 23 years old when her disability commenced in 2014.

> She was able to sit for eight hours in an eight-hour workday, and stand or walk for two hours in an eight-hour workday. She could occasionally balance (as that term is defined in the Dictionary of Occupational Titles), and occasionally stoop, kneel, crouch, and crawl. She could never climb ladders, ropes, or scaffolds, and could never be exposed to dangerous machinery and hazardous heights. The claimant was unable to work at a production rate pace such as on an assembly line, and in addition to normal breaks would have been off task 45% of a workday. She would also have been absent six to nine days a month on a scheduled basis for treatment.

PageID.68. The ALJ also found that during this time period, plaintiff was unable to perform any past relevant work. PageID.73.

At the fifth step, the ALJ found that from November 16, 2014, through March 31, 2016, considering the claimant's age, education, work experience, and residual functional capacity, there were no jobs that existed in significant numbers in the national economy that she could have performed. PageID.73. Accordingly, the ALJ found that plaintiff was under a disability, as defined by the Social Security Act, from November 16, 2014, through March 31, 2016. PageID.74.

### B. Plaintiff's disability ended on April 1, 2016

At the second step, the ALJ found that plaintiff has not developed any new impairments since April 1, 2016, the date her disability ended. "Thus, the claimant's current severe impairments are the same as that present from November 16, 2014, through March 31, 2016." PageID.74. At the third step, the ALJ found that beginning April 1, 2016, plaintiff has not had an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. *Id*.

At the fourth step, the ALJ found that medical improvement occurred as of April 1, 2016, stating:

> The evidence since April 2, 2016, shows that the claimant has not required additional intravenous antibiotics, or ongoing oral antibiotics for her Lyme disease. Treatment since then has primarily consisted of physical therapy in early 2017 and

> medications in the form of Lyrica and Cymbalta (Exhibits 17F, and 20F). As discussed earlier in the decision, medical records prior to and since March 31, 2016, document numerous reports of improvement (Exhibits 2F, 3F, 4F, 5F, 6F, 7F, 11F, 14F, 15F, and 20F), and it was reported on November 2, 2017, that the claimant's naturopath had noted resolution of Lyme [sic] (Exhibit 15F). Medical records prior to, and since March 31, 2016, also document numerous reports of improvement with respect to the claimant's temporomandibular joint dysfunction and occipital neuralgia (Exhibits lF, 2F, 3F, 4F, 6F, and 15F). Her headaches were described on August 25, 2016, as daily low grade and functional migraines (Exhibit 6F), and on November 2, 2017 as intermittent in nature (Exhibit 15F), and mild improvement with the bite splint was noted on August 25, 2016 (Exhibit 6F). The claimant was weaned off of Topamax in 2017 and as of September 2018 was being prescribed only Ativan and the herbal supplement Migravant for her headaches (Exhibit 17F).
>
> The evidence shows that after her intravenous antibiotic infusions were completed, the claimant was able to volunteer at a food bank for two to three months in early 2016 (Exhibit 11F), and was able to travel to Hawaii in 2017 and 2018 and to the Philippines in 2018 (Exhibits 7F, 8F, 16F, 18F, 20F, 21F, and Testimony). She attended a church fellowship school for five weeks in Hawaii in early 2018 (Exhibits 16F, 18F, 20F, and Testimony), and it was reported in May 2018 that she had did missionary work in the Philippines (Exhibits 20F, and 21F), and on June 4, 2018 that she had just returned from Hawaii after a month in the Philippines (Exhibit 18F). The claimant returned to part-time work as a barista from March 2016 through at least November 2017, as a substitute teacher in the first and second quarters of 2017, and as an on-line tutor for about a month in August 2018 (Exhibits 3D, 4D, 5D, 6D, 7D, 8D, 9D, 1E, 2E, 6E, and 12E). She also performed substantial gainful activity as a nanny in Hawaii for three months in 2017, and since September 2018 has been engaged in substantial gainful activity as a middle school youth director (Exhibits 9D, 10D, 17E, 18E, and Testimony).

PageID.75-76.

The ALJ found that "[t]he medical improvement that has occurred is related to the ability to work because there has been an increase in the claimant's residual functional capacity (20 CFR 404.1594(b)(4)(i) and 416.994(b)(1)(iv)(A))." PageID.76. The ALJ explained that,

> In comparing the claimant's residual functional capacity for the period during which she was disabled with the residual functional capacity beginning April 1, 2016, the undersigned finds that the claimant's functional capacity for basic work activities has increased. In particular, the treatments which resulted in absences and time off task have been concluded. In addition, the claimant's exertional capacity has increased from a reduced range of sedentary level work to a reduced range of light level work.

6

PageID.76.

In this regard, the ALJ found that:

After careful consideration of the entire record, the undersigned finds that, beginning April 1, 2016, the claimant has had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), in that she can lift and carry ten pounds frequently and twenty pounds occasionally. She can sit for eight hours in an eight-hour workday, and stand and/or walk for eight hours in an eight-hour workday. She can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs. She can never climb ladders, ropes, or scaffolds, and can never be exposed to dangerous machinery or hazardous heights. The claimant is unable to work at a production rate pace, such as on an assembly line, and, in addition to normal breaks, may be off task 5% of a workday.

PageID.76. The ALJ also found that since April 1, 2016, plaintiff has been able to perform her past relevant work as a child's tutor as actually and generally performed. PageID.81.

After finding that plaintiff is capable of performing her past relevant work at step four, the ALJ made an alternative finding at step five, where she found that since April 1, 2016, plaintiff could perform a significant number of unskilled jobs at the light exertional level. PageID.81-82. Specifically, the ALJ found that plaintiff could perform the requirements of unskilled light work in the national economy such as cleaner (900,000 jobs), cashier (1,000,000 jobs), and administrative support clerk (310,000 jobs). PageID.81-82. Accordingly, the ALJ determined that plaintiff's disability ended on April 1, 2016, and that she has not become disabled again through April 19, 2019 (the date of the decision). PageID.82.

### III. DISCUSSION

Plaintiff has raised four errors on appeal.

**A. The ALJ committed reversible error by failing to provide substantial evidence that plaintiff's disability had ended as of March 31, 2016.**

Plaintiff contends that the ALJ chose an inaccurate date for medical improvement and the end of her disability. The Court construes plaintiff's claim as "closed period case," *i.e.*,

one in which the ALJ determines that the claimant was disabled for a specific period of time that commenced and ended prior to the date of the ALJ's decision. *See, e.g., Pickett v. Bowen*, 833 F.2d 288, 289 n. 1 (11th Cir. 1987). The medical improvement standard in 20 C.F.R. §§ 404.1594 and 416.994 applies to closed period cases. *See Shepherd v. Apfel*, 184 F.3d 1196, 1198, 1200 (10th Cir.1999); *Long v. Secretary of Health and Human Services*, No. 93-2321, 1994 WL 718540 at *2 (6th Cir. Dec.27, 1994) ("In order to find a closed period of disability, the Secretary must find that at some point in the past, the claimant was disabled and that, at some later point in the past, he improved to the point of no longer being disabled"); *Jones v. Shalala*, 10 F.3d 522, 524 (7th Cir.1993).

"Medical improvement" is defined in 20 C.F.R. §§ 404.1594(b)(1) and 416.994(b)(1) as follows:

> Medical improvement is any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled. A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with your impairment(s) . . .
>
> The Court recognizes the difficulty in establishing such a date.
>
> As the Sixth Circuit has recognized, an ALJ's decision regarding the date on which a claimant's disability ended need not be supported by "smoking gun medical documents" generated on the date in question. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 285 (6th Cir. 2009). Instead, the ALJ's determination as to the date on which a claimant's disability ended must simply be "not so wholly arbitrary so as to carry the ALJ's decision outside the 'zone of choice' that the ALJ possesses in rendering disability decisions." *Id*.

*Valencia v. Commissioner of Social Security*, 216 F. Supp. 3d 835, 839 (W.D. Mich. 2016).

Plaintiff contends that her disabled condition did not improve on March 31, 2016. Plaintiff's Brief (ECF No. 13, PageID.879). Plaintiff relies on a letter/opinion from Joseph G. Jemsek, M.D.[4] The ALJ addressed the doctor's letter/opinion as follows:

> The undersigned has also considered the October 31, 2018 opinion of Joseph G. Jemsek, M.D, who reported he has treated the claimant since May of 2014. Dr. Jemsek opined that the claimant has considerable difficulties in stamina and endurance which render her unable to sustain even sedentary activities for more than a few hours total each day; that her concentration remains impaired; that she has limited standing, walking, reaching, and lifting; that her sensitivity to light and sound are greatly heightened during a migraine; that her TMJ pain and trigeminal neuralgia can make even talking, eating, and drinking painfully difficult and preclusive at times; that she should avoid or minimize as much as possible all exposure to physical, psychological, mental, or environmental stressors; that she cannot meaningfully or gainfully participate in work activity without significant exacerbation of symptoms; that she is unable to function either physically or cognitively on a sustained consistent and predictable basis; and that she cannot maintain gainful employment in any capacity at any occupation (Exhibit 22F). While Dr. Jemsek is a treating physician, the determination of whether an individual is disabled and unable to maintain substantial gainful employment are issues reserved to the Commissioner. Dr. Jemsek's statements are somewhat vague in nature as he failed to further quantify the degree of standing, walking, lifting, reaching, or impaired concentration over time, and did not quantify the term "a few hours." Although he treated the claimant for several years, he did not account for the claimant's improvement with treatment. Furthermore, the degree of limitations implied is not well supported in Dr. Jemsek's contemporaneous treatment records prior to or since March 31, 2016. His opinions are also inconsistent with the evidence as a whole after March 31, 2016, including the objective physical examination findings, the decreased treatment sought and received, and the work activity and reported activities of daily living, which since September 2018 had included a full-time salaried job. The undersigned has given Dr. Jemsek's opinion some weight, as reflected in the residual functional capacity and undersigned's finding of disability, during the period from November 16, 2014, to March 31, 2016. However, the undersigned has given this opinion little weight with respect to the period beginning on April 1, 2016.

---

[4] Plaintiff also refers to a second letter from Dr. Jemsek dated May 30, 2019 (PageID.50). Plaintiff's Brief at PageID.873-874. This letter, sent more than one month after the ALJ denied benefits, was not part of the administrative record. When a plaintiff submits evidence that has not been presented to the ALJ, the Court may consider the evidence only for the limited purpose of deciding whether to issue a sentence-six remand under 42 U.S.C. § 405(g). *See Sizemore v. Secretary of Health and Human Services*, 865 F.2d 709, 711 (6th Cir.1988). Plaintiff's statement of errors does not include a request for a sentence-six remand and she does not meet her burden for such a remand. *See Hollon ex rel. Hollon v. Commissioner of Social Security*, 447 F.3d 477, 483 (6th Cir. 2006) (the party seeking a remand bears the burden of showing that the two requirements for a sentence-six remand, *i.e.*, good cause and materiality, are met).

PageID.71-72.

Based on the record in this case, the ALJ's determination that plaintiff experienced medical improvement on April 1, 2016, is supported by substantial evidence. This date is within the ALJ's zone of choice. *See Valencia*, 216 F. Supp. 3d at 839. *See Buxton v. Halter*, 246 F.3d 762, 772-73 (6th Cir. 2001) ( "[t]he findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion"). Accordingly, plaintiff's claim of error is denied.

### B. The ALJ committed reversible error by failing to assign proper credibility to the opinion of plaintiff's treating physician.

Because plaintiff filed her application before March 27, 2017, the "treating physician rule" applies to the ALJ's decision. *See* 20 C.F.R. § 404.1527. A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton*, 246 F.3d at 773. "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). Under the regulations, a treating source's opinion on the nature and severity of a claimant's impairment must be given controlling weight if the Commissioner finds that: (1) the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) the opinion is not inconsistent with the other substantial evidence in the case record. *See Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375 (6th Cir. 2013); 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2). Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. §

404.1527(c)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

Plaintiff contends that the ALJ erred by failing to give Dr. Jemsek's October 31, 2018 opinion (PageID.852-856) controlling weight. Having reviewed Dr. Jemsek's letter, the Court concludes that the ALJ gave good reasons for giving this opinion little weight with respect to plaintiff's condition after April 1, 2016. In this regard, plaintiff's daily activities (which included traveling to Hawaii in 2017 and 2018, working as a nanny in Hawaii in 2017, and traveling to the Philippines to do missionary work in 2018), as well as her work history and medical history, indicate that she experienced medical improvement. Accordingly, this claim of error is denied.

> **C. The ALJ committed reversible error by relying upon impermissible boilerplate language to justify her decision without properly considering the plaintiff's testimony and thus failing to properly evaluate her credibility.**

As an initial matter, credibility is no longer used in the agency's terminology. In SSR 16-3p, the agency announced that:

> [W]e are eliminating the use of the term "credibility" from our sub-regulatory policy, as our regulations do not use this term. In doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character. Instead, we will more closely follow our regulatory language regarding symptom evaluation.

SSR 16-3p, 2016 WL 1119029 at *1-2.

Here, plaintiff contends that the ALJ used impermissible "boilerplate" language in her opinion:

> After considering the evidence of record for the period beginning April 1, 2016, the undersigned finds that some of the claimant's medically determinable impairments could reasonably be expected to produce some of the alleged symptoms; however, some of the claimant's statements concerning intensity, persistence, and limiting

11

> effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reason explained in this decision (PageID.77).

Plaintiff's Brief at PageID.881-882. Plaintiff cites *Browning v. Colvin*, 766 F.3d 702, 708 (7th Cir. 2014) for the proposition that the implication in this "pernicious" boilerplate "is that the assessment of the claimant's ability to work preceded and may invalidate the claimant's testimony about his or her ability to work. Actually that testimony is properly an input into a determination of ability to work." *Id*. However, other than referencing *Browning*, plaintiff has failed to develop an argument on which to invalidate the ALJ's decision based on the use of this boilerplate sentence. "It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997). Accordingly, this claim of error is denied.

### D. The ALJ committed reversible error by failing to properly consider the issue of a trial work period.

Plaintiff contends that the ALJ erred because she ignored the issue of a trial work period pursuant to 20 C.F.R. § 404.1592. Plaintiff's Brief at PageID.882. *See Allen v. Apfel*, 3 Fed. Appx. 254, 258 (6th Cir. 2001) ("the trial work period provided for in § 404.1592 was designed to permit a claimant, already deemed disabled, to test his ability to work and still be considered disabled"). While plaintiff cited the regulation, she did not develop an argument on the issue. Plaintiff's statements that she never reached a level of income to be substantial gainful activity, that "the finding that there was PRW [past relevant work] is wrong," and "[i]n addition, 20 CFR Section 404.1592 defines a trial work period and requires nine months of employment before such a period is started—it also discusses the amount of money necessary to reach the trial of work standard," are conclusory statements of plaintiff's position. Furthermore, plaintiff has failed to explain why she was entitled to a trial work period. *See Mullis v. Bowen*, 861 F.2d 991,

12

993 (6th Cir. 1988) ("there can be no 'trial work period' before a claimant files for benefits because a 'trial work period' only applies after a person has been adjudged disabled, in order to permit efforts to resume work without jeopardizing benefits if the effort failed").[5] Accordingly, this claim of error is denied.

## IV. CONCLUSION

For these reasons, the Commissioner's decision will be **AFFIRMED**. A judgment consistent with this opinion will be issued forthwith.

Dated: March 14, 2022  /s/ Ray Kent
United States Magistrate Judge

---

[5] *See Rieber v. Astrue*, No. 3:10CV431-S, 2011 WL 2634122 at *12 (April 5, 2011), *R&R adopted*, 2011 WL 2633867 (W.D. Ky. July 5, 2011) ("Because this was an award of a closed period of disability, 20 C.F.R. § 404.1594(d)(5) appears to indicate that the ALJ was under no obligation to consider whether she was entitled to a trial work period because she was engaging in substantial gainful activity during the relevant time period of ALJ Miller's inquiry—i.e., before his decision granting a closed period award. In other words, the period of disability opened and closed before the plaintiff would have become entitled to a trial work period. This is consistent with the holding in *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir.1988), finding that a trial work period only applies after a person has been adjudged disabled."